# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO: 3:04CV516

| | |
|---|---|
| **FILOMENA CHAVES,** <br> Plaintiff <br> vs. <br> **JO ANNE B. BARNHART,** <br> **Commissioner of Social Security,** <br> Defendant. | ) <br> ) <br> ) <br> )     <u>**ORDER**</u> <br> ) <br> ) <br> ) <br> ) |

**THIS MATTER IS BEFORE THE COURT** on the "Plaintiff's Motion for Summary Judgment" (Document No. 8) and the "Plaintiff's Memorandum in Support ..." (Document No. 9), both filed March 14, 2005 by Filomena Chaves; and the "Motion for Summary Judgment (Document No. 10) and "Memorandum in Support of the Commissioner's Decision" (Document No. 11), both filed April 20, 2005 by the Commissioner. The parties have consented to magistrate jurisdiction under 28 U.S.C. § 636(c), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds that the Commissioner's decision to deny Social Security disability benefits is supported by substantial evidence. Accordingly, the undersigned will <u>deny</u> Ms. Chaves' Motion for Summary Judgment, <u>grant</u> the Commissioner's Motion for Summary Judgment, and <u>affirm</u> the Commissioner's decision.

## I. PROCEDURAL HISTORY

On October 3, 2001, Ms. Chaves applied for a period of disability and disability insurance benefits, alleging that she became disabled on December 1, 1996 as a result of discomfort and pain associated with having one kidney. Ms. Chaves' claim was denied initially and then again on

1

reconsideration. Ms. Chaves requested a hearing before an Administrative Law Judge ("ALJ"), which was held April 3, 2003. At the hearing, Ms. Chaves amended her alleged onset date of disability to May 9, 2000. On October 10, 2003, the ALJ issued an opinion denying Ms. Chaves' claim.

Subsequently, Ms. Chaves filed a timely Request for Review of Hearing Decision. On August 4, 2004, the Appeals Council denied Ms. Chaves' request for review, making the hearing decision the final decision of the Commissioner.

Ms. Johnston filed this action on October 8, 2004, and the parties' cross-motions for summary judgment are ripe for this Court's consideration.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), the Fourth Circuit defined "substantial evidence" as

> being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Id. (quoting Perales, 402 U.S. at 401).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Ultimately, it

2

is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.") Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether – at any time prior to December 31, 2001, Ms. Chaves' date last insured – Ms. Chaves became "disabled" as that term of art is defined for Social Security purposes.[1] The ALJ considered the evidence and concluded in his written opinion that Ms. Chaves is and/or has status post-nephrectomy, fibromyalgia, depression, chronic fatigue syndrome, status post-bilateral carpal tunnel release, left shoulder arthroscopy with decompression, cervical disc disease, status post arthroscopic lateral meniscectomy and chondroplasty of the distal lateral femoral condyle – all of which are "severe" impairments within the regulatory meaning; that no impairment or combination of impairments meets or medically equals one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; that Ms. Chaves retains the residual function capacity to perform

---

[1] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
>   inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ....

Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

3

"light" and "sedentary" work that does not involve continuous, repetitive handling or fingering, overhead reaching or repetitive side to side movement of her head, and that is in a low stress environment where she would perform simple, routine, repetitive tasks; that Ms. Chaves was unable to perform any of her past relevant work; but that Ms. Chaves was capable of making a successful adjustment to work that exists in significant numbers in the economy. Accordingly, the ALJ concluded that Ms. Chaves was not under a disability as defined for Social Security purposes.

Ms. Chaves contends on appeal that the ALJ erred (1) by failing to consider her interstitial cystitis; and (2) by concluding that she was capable of making a successful adjustment to work that exists in significant numbers in the economy. The undersigned concludes, however, that Ms. Chaves did not meet her burden of establishing that her interstitial cystitis was a medically determinable impairment prior to the expiration of her insured status. The undersigned further concludes that substantial evidence supports the ALJ's finding that Ms. Chaves was capable of making a successful adjustment to work that exists in significant numbers in the economy, as well as the ultimate conclusion that Ms. Chaves was not disabled.

**Whether the ALJ Erroneously Failed to Consider Ms. Chaves' Interstitial Cystitis**

Ms. Chaves has the burden of establishing the actual existence of an impairment prior to her date last insured. To meet this obligation, she must submit medical evidence consisting of signs, symptoms and laboratory findings. 20 C.F.R. §§ 404.131, 404.1508.

Social Security Ruling 02-2p (the "Ruling") "provide[s] guidance on [Social Security Administration] policy concerning the development and evaluation of interstitial cystitis ... in disability claims ...." The Ruling explains that interstitial cystitis can be found to be a medically determinable impairment when it is accompanied by "appropriate symptoms, signs and laboratory findings ...." The

4

most common symptoms of interstitial cystitis are "an urgent need to urinate (urgency), a frequent need to urinate (frequency), and pain in the bladder and surrounding pelvic region." To identify interstitial cystitis as a medically determinable impairment, the Commissioner

> generally will rely on the judgment of a physician who has made the diagnosis after a review of a claimant's medical history, a physical examination of the claimant, and any pertinent testing to establish the existence on [interstitial cystitis.] In the absence of evidence to the contrary in the case record, we will find a medically determinable impairment is established if the evidence contains the appropriate symptoms, signs, and laboratory findings ... However, if there is evidence that indicates that the diagnosis is questionable, and the evidence is inadequate to determine whether or not the individual is disabled, we will contact the treating source for clarification ....

The Ruling also describes the evaluation that will occur after the condition is found to be a medically determinable impairment.

Ms. Chaves argues that the ALJ erred by failing to consider her interstitial cystitis. A review of the record reveals, however, that Ms. Chaves did not require regular treatment for her interstitial cystitis during the period between May 9, 2000 and December 31, 2001. In September 2001, Ms. Chaves saw a doctor at the Urology Specialists of the Carolinas ("Urology Specialists"), complaining in part of her need to urinate frequently, her occasional inability to empty her bladder, and left flank pressure that occasionally radiated to the left groin. Ms. Chaves also reported that she drank a lot of water. The only diagnosis made was that Ms. Chaves had a solitary kidney and perhaps had hydronephrosis. Dr. Bradley Weisner's notes from an October 2001 appointment at Urology Specialists do not reflect continued symptoms. Dr. Weisner concluded that Ms. Chaves had a "[s]olitary kidney with no evidence of hydronephrosis" and also was experiencing "[m]usculoskeletal back pain."

Ms. Chaves again sought treatment at Urology Specialists in November 2001, complaining

5

in part of her need to urinate frequently, a sensation of incomplete voiding, and left flank pressure. Ms. Chaves was given a prescription to treat her symptoms. At a follow up appointment in December 2001, Ms. Chaves was given samples of a different medication. Tests performed by Urology Specialists seem to reflect only that Ms. Chaves has a small bladder. In December 2001, Ms. Chaves may have also discussed these symptoms with her physician at the Southeast Women's Center for OB/GYN. Ms. Chaves, however, did not seek further treatment for interstitial cystitis until May 2002, almost five months after the expiration of her insured status. The first diagnosis of interstitial cystitis appears to have come in August 2002, when Dr. Michael R. O'Neill noted "probable interstitial cystitis." At the April 2003 hearing, Ms. Chaves' attorney stated that "the interstitial cystitis is probably part of her fibromyalgia." Based on the foregoing, the undersigned concludes that Ms. Chaves failed to meet her burden of establishing that her interstitial cystitis was a medically determinable impairment prior to December 31, 2001.

### Whether Substantial Evidence Supports the ALJ's Finding that Ms. Chaves was Capable of Making a Successful Adjustment to Work in the National Economy

In the sequential evaluation process employed by the Social Security Administration, once a plaintiff establishes that she is unable to return to her past relevant work, the burden shifts to the Commissioner to establish that there are other jobs in the national economy that she can perform. Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). In making that determination, the ALJ will look at the tables in Appendix 2, which indicate that the disability determination should be based on various combinations of age, education and past vocational experience in conjunction with the residual functional capacity of the plaintiff. Id. at 265. If the plaintiff suffers from solely non-exertional limitations, or has a combination of exertional and non-exertional limitations, the ALJ must

not use the Medical-Vocational Guidelines exclusively and must make a full and individualized consideration of all the relevant vocational factors. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983). If the Commissioner is to prevail, the Commissioner must show – by expert vocational testimony – that, despite the combination of exertional and non-exertional impairments, the plaintiff is capable of performing work that exists in significant numbers in the national economy. Id.

Ms. Chaves argues that there is not substantial evidence to support the ALJ's finding that Ms. Chaves was capable of making a successful adjustment to work that exists in significant numbers in the national economy. Specifically, Ms. Chaves contends that the question posed to the vocational expert did not fully reflect her limitations.

Review of the hearing transcript reveals that the ALJ did, in fact, fully reflect Ms. Chaves' limitations in the hypothetical question posed to Janette Clifford, the testifying vocational expert. The ALJ asked Ms. Clifford what jobs a hypothetical claimant – with the same age, education and work background as that of Ms. Chaves and who is capable of performing work at the "light" or "sedentary" level so long as that work was low stress with simple, routine tasks and required no continuous, repetitive handling or fingering, no overhead reaching, and no repetitive side-to-side movement of the head – could perform. Ms. Clifford testified that such an individual could be a food checker (sedentary, semi-skilled job with 3,333 jobs in North Carolina, a cashier II (a light, unskilled job with 2,238 jobs in North Carolina), a small products assembler (a light, unskilled job with 26,488 jobs in North Carolina), an information clerk (a light, unskilled job with 1,222 jobs in North Carolina), or a dowel inspector (a sedentary, unskilled job with 2,404 jobs in North Carolina). A review of the Dictionary of Occupational Titles corroborates Ms. Clifford's testimony that the identified jobs did

not require continuous, repetitive handling and fingering.[2] The hypothetical claimant described by the ALJ had limitations consistent with Ms. Chaves' residual functional capacity – which Ms. Chaves does not challenge on appeal.

Ms. Chaves also contends that the ALJ's determination was flawed because the hypothetical question posed to Ms. Clifford did not include any limitations resulting from her interstitial cystitis. As discussed supra, Ms. Chaves has not demonstrated that her interstitial cystitis was a medically determinable impairment prior to her last insured date and has thus not shown that the ALJ was required to include limitations resulting from her interstitial cystitis in the hypothetical question to Ms. Chaves. Based on the foregoing, the undersigned concludes that substantial evidence supports the ALJ's findings regarding Ms. Chaves' ability to perform work in the economy. Accordingly, Ms. Chaves is not disabled for Social Security purposes.

## V. ORDER

Accordingly, **IT IS HEREBY ORDERED THAT**

1. The "Plaintiff's Motion for Summary Judgment" (Document No. 8) is **DENIED**; the Commissioner's "Motion for Summary Judgment" (Document No. 10) is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

---

[2] The Dictionary of Occupational Titles classifies the cashier, assembler and food checker positions as requiring "frequent" fingering and the information clerk and dowel inspector jobs as requiring "occasional" fingering.

**Signed: December 6, 2005**

_____
David C. Keesler
United States Magistrate Judge